UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 25-cv-20830

MORDECHAI KORF and URIEL LABER,

        Plaintiffs,

vs.

UNITED STATES DEPARTMENT OF STATE,

        Defendant.
_____/

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO STAY**

        Pursuant to the Court's Orders dated July 25 and July 28, 2025, (ECF Nos. 16, 21), Plaintiffs Mordechai Korf and Uriel Laber ("Plaintiffs") hereby submit their Sur-Reply to Defendant United States Department of State's ("Defendant") Reply in Support of its Motion to Stay Action (ECF No. 17) (the "Reply").

**PRELIMINARY STATEMENT**

        Despite the passage of over five months since the filing of this lawsuit on February 21, 2025—and nearly three years since Plaintiffs submitted their underlying FOIA request—Defendant has still not produced a single responsive document. Dunlap Decl. at ¶¶ 3-4;[1] ECF No. 13-1 at ¶ 5. In its Reply, Defendant represented that it "expects to make its first production of responsive material that is not exempt from FOIA's disclosure requirements on or around July 24, 2025," (Reply at 2; ECF No. 17-1, ¶ 29 (the "Weetman Declaration")), yet Defendant has neither produced any documents nor provided Plaintiffs with any update or explanation. *See* Dunlap Decl. ¶ 4. That date has come and gone again still without any production.

---

[1] Citation to the "Dunlap Decl." refers to the Declaration of Robert T. Dunlap submitted contemporaneously herewith.

Even at Defendant's proposed pace of 300 pages per month, (with which it has not actually complied with for the past years), it will take more than 60 years to process all potentially responsive records—an outcome irreconcilable with FOIA's statutory purpose. *See* ECF No. 13 at 9-10; ECF No. 13-12 at 3.

USDOS asserts in conclusory fashion that "a search for responsive records in this case was initiated in December 2022," but provides no detail about any actual search activity until after this lawsuit was filed. *See* Weetman Decl. ¶ 23 ("the remainder of this Declaration will focus on the search conducted by the IAP/LA team and the Department's ongoing negotiations with Plaintiffs on the scope of the request from February through June 2025"). Defendant's failure to meaningfully explain its effort to search for or process records until forced by the instant litigation belies any claim to due diligence in processing Plaintiffs' request. In fact, USDOS did not even begin running searches until March 2025—over two years after receiving the request. ECF No. 13-4 at 2 ("The agency would construe the present as the day it began running searches, **which was in March**." (emphasis added)). Far from evidencing reasonable progress, such delay requires heightened processing—not a stay.

Defendant emphasizes a surge in FOIA volume from 2023–2025 and asserts that it processes requests on a "first-in, first-out" basis. *See* Reply at 3; Weetman Decl. ¶ 33 ("By the end of FY 2023, the number of pending FOIA requests had increased to 24,020 . . . . in FY 2020, the Department received 8,747 requests; in FY 2023, this number increased to 15,646 requests"). But Plaintiffs' request was submitted in December 2022—and should be treated as an earlier "first-in" request. Any post-2022 influx of FOIA requests does not justify the Department's failure to process this one. Moreover, Defendant's invocation of "exceptional circumstances" is unavailing as a matter of law. Courts have consistently held that neither routine backlogs nor general volume constitute exceptional circumstances under FOIA.

Defendant's reliance on the overall volume of FOIA litigation is also misplaced. *See* Weetman Decl. ¶¶ 34-35. No plaintiff should have to sue in the first place to compel reasonable search and production -- the fact that Defendant is subject to other lawsuits is of no moment. And Defendant offers no evidence that other litigants await initial productions almost three years after submitting a request. Many FOIA cases concern discrete redactions or exemptions; this case involves over 80,000 potentially responsive documents and a complete failure to produce any

2

records at all. Defendant provides no benchmark or metric to suggest that Plaintiffs' request is being treated equitably.

Although Defendant asks for judicial deference, courts have a duty under FOIA to ensure prompt disclosure—not to ratify endless delay. FOIA imposes enforceable timelines, and agencies are not entitled to indefinite leeway. Judicial oversight is especially critical where delays are both unexplained and extreme.

This case starkly illustrates the very type of agency delay that FOIA was enacted to prevent. Defendant's continued failure to meaningfully process Plaintiffs' request—despite litigation and years of delay—requires judicial intervention. Such disregard for statutory deadlines is not merely inefficient; it is an unlawful violation of Plaintiffs' rights pursuant to FOIA.

## ARGUMENT

### 1. Defendant Fails to Show Either Due Diligence or Exceptional Circumstances

#### a. Defendant's Production Schedule Lacks Diligence and is Unreasonable

Defendant concedes that to obtain a stay it must show " ''due diligence' in processing the requests." Reply at 9.

As Plaintiffs showed, (ECF No. 14 at 2, 5), "due diligence" does not apply to the facts of this case because "unreasonable delays in disclosing nonexempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Villanueva v. United States Dep't of Justice*, 19-23452-CIV, 2021 WL 5882995, at *3 (S.D. Fla. Dec. 13, 2021) (O'Sullivan, J.). In *Villanueva*, "defendant's proposed production schedule at a regular rate of 500 pages per month [wa]s woefully inadequate" given that the FOIA request had been "pending for three and a half years and only 500 of 21,000 pages of responsive documents ha[d] been produced" *Id.* at *4. The *Villanueva* case featured prominently in Plaintiffs' Opposition to the Motion to Stay but, in Reply, Defendant ignores *Villanueva* and fails to address it at all – tacitly conceding that its holding contradicts Defendant's claims of diligence and its proposed production schedule.[2]

---

[2] Magistrate Judge O'Sullivan's holding in *Villanueva* is consistent with the holding of other courts in this District and elsewhere. *See, e.g., Gyetvay v. United States Dep't of Just.*, No. 2:22-CV-571-JLB-KCD, 2024 WL 2740336, at *3 (M.D. Fla. Apr. 23, 2024) ("the Tax Division is not yet halfway through its first-level review two years after Gyetvay filed his request. That timeline can hardly be described as diligent"); *2005 Robert Julien Fam. Delaware Dynasty Tr. v. Internal Revenue Serv.*, No. 23-CV-80756-RLR/BER, 2024 WL 678134, *3 (S.D. Fla. Feb. 20, 2024) (finding production schedule insufficient when it would take more than three more years (after pending for more than 4 years). Courts have even held that one to two months is sufficient time

Defendant has identified approximately 80,092 documents that are potentially responsive to Plaintiffs' FOIA Request. *See* ECF No. 13-10 at 4-6. Assuming Defendant processes 450 pages every six weeks, and that each document is approximately three pages, it would take approximately 3,201 weeks – or **61 and a half years** – just to process the documents. *See Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999) ("[P]eople who file Freedom of Information Act requests in 1986, revised and clarified in 1993, cannot be made to wait until 2001."). If Defendant follows its proposed protocol and produces the 182 documents relating to Korf and Laber, it will take Defendant 11.5 months, nearly a year. *See* Weetman Decl. ¶ 29 (182 documents constituting 3,345 pages produced at rate of 300 pages per month). Defendant asks Plaintiffs to accept its proposed processing schedule without objection, despite the fact that Plaintiffs have already waited more than two and a half years without the production of a single document—and were previously assured, inaccurately, that "the [USDOS] takes its FOIA responsibilities very seriously and [is] processing this request in as timely a manner as possible." ECF No. 13-7 at 3. In reality USDOS had not even searched for any documents at that time and did not search for any documents until this lawsuit was filed. ECF No. 13-4 at 2.

Indeed, to this day, no diligence has been exercised because not a single document has been produced and Defendant has not met its own self-imposed deadline of July 24, 2025. Far from evidencing reasonable progress, such delay requires heightened processing—not a stay.

### b. There are No Exceptional Circumstances

In addition to "due diligence," to obtain a stay Defendant would also need to show "exceptional circumstances." *See Daily Caller News Found. v. Fed. Bureau of Investigation*, 387 F. Supp. 3d 112, 116 (D.D.C. 2019).

Defendant's Reply fails to show "exceptional circumstances." As Plaintiffs showed, Courts have consistently held that neither backlogs nor general volume constitute exceptional

---

for an agency to process broad FOIA requests that may involve classified or exempt material. *See, e.g., Am. C.L. Union v. Dep't of Def.*, 339 F. Supp. 2d 501, 505 (S.D.N.Y. 2004) (despite the fact that national security issues were raised by the FOIA request at issue, ordering production of all responsive documents within one month and noting that "[t]his schedule provides a reasonable time for the government to respond to plaintiffs' requests"); *Nat. Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) (ordering the "vast majority" of the processing to be completed within 32 days and noting that the "Government can offer no legal or practical excuse for its excessive delay in responding to that request and providing documents to which [Plaintiff] is legally entitled").

4

circumstances under FOIA. *See* ECF No. 14 at 4. USDOS' argument rests entirely on backlog and workload strain—grounds that courts have squarely rejected. *See Gyetvay*, 2024 WL 2740336, at *1 ("Exceptional circumstances do not 'include a delay that results from a predictable agency workload of requests . . . unless the agency demonstrates reasonable progress in reducing its backlog of pending requests.'"); *Daily Caller*, 387 F. Supp. 3d at 116; ("Accordingly, it is not sufficient that an agency receives a high number of FOIA requests or has a large backlog of requests to which it must respond."). Plaintiffs relied on both *Gyetvay* and *Daily Caller* in their Opposition (ECF No. 14 at 3-4), but Defendant does not even attempt to distinguish them.

Defendant has also failed to show progress in reducing its backlog. *See* ECF No. 17-1 ¶ 33 ("the Department's backlog has continued to grow."). While Defendant provides vague references to internal workflows, training, and "alternative access mechanisms" as purported efforts to reduce backlog, it fails to show any meaningful reduction of its backlog. *Id.* at ¶ 45.

Defendant alleges a surge in FOIA volume since 2023 and asserts that it processes requests on a "first-in, first-out" basis, (Reply at 4; Weetman Decl. at ¶ 33), but Plaintiffs' request was submitted in December 2022 and should be treated as an earlier "first-in" request.[3] Any post-2022 influx of FOIA requests is irrelevant and does not justify the Defendant's failure to process Plaintiffs' request. *See Gyetvay*, 2024 WL 2740336 at *2-3 ("the Tax Division received 136 FOIA requests between May 2, 2023, and March 25, 2024, which are contributing to a backlog . . . . But the Tax Division has not shown these later-filed requests justify another extension.").

In sum, the purported volume of incoming FOIA requests and alleged backlog alluded to by Defendant is a legally insufficient basis for a stay. As Plaintiffs showed, Defendant's position would allow any agency with a large backlog to indefinitely delay producing records—precisely what FOIA forbids." ECF No. 14 at 4. "The argument that because [Defendant] has a backlog of cases, [Defendant] shouldn't be required to speedily produce documents, is circular and would amount to an end run around FOIA." *Id.*

Because Defendant has failed to show either "exceptional circumstances" or "due diligence," a stay is not only inappropriate, but would contravene FOIA's central purpose.

---

[3] Because Defendant only specifically identifies an increase in requests beginning in 2023, and Plaintiffs' request is from December 2022, the cases Defendant cites regarding consideration of effects on other FOIA requesters are inapposite – it is the Plaintiffs who have been "patiently waiting their turn." Reply at 2-3.

5

## 2. The Court has the Power to Enforce FOIA and Order Timely Production

Defendant's argument that "the record is not sufficiently developed at this time to support dispositive motions" (Reply at 10) is incorrect as the Courts do not excuse indefinite agency delay merely because no exemptions have yet been asserted. When an agency fails to act, an order compelling compliance is not premature—it is necessary. *See* ECF No. 14 at 7 (collecting cases). As Plaintiffs showed, the *Miscavige* case that Defendant cites (Reply at 10) has no bearing on this case. *See* ECF No. 14 at 5-7 (distinguishing *Miscavige*). That case concerned the adequacy of the IRS's exemption claims over already-identified documents, not agency delay in processing or producing records. It did not address circumstances like those here, where the agency fails to conduct a timely search or make production at all—issues that fall well outside *Miscavige*'s scope.

The only other case cited by Defendant in support of this proposition is *AFGE Loc. 527 v. U.S. Immigr. & Customs Enf't,* No. 21-cv-21992 (KMM), 2024 WL 1179971 (S.D. FL 2024). *See* Reply at 10. In that case, as in *Miscavige*, "**Plaintiff d[id] not dispute the adequacy of the search conducted by Defendant**," and the only issue was "the adequacy of Defendant's invocation of exemption to withhold portions of [a] Guidebook." *Id.* at *3 (emphasis added). Here, however, Plaintiffs challenge the adequacy of the search, rendering the *AFGE* case equally inapposite.

## 3. Defendant Cites to Numerous Inapposite Cases

### a. Defendant's Claims about "Risk of Overburdening" and "Mistaken Release" Rely on Inapposite Cases

Defendant cites to *Protect Democracy Project v. U.S. Dep't of Defense*, 263 F. Supp. 3d 293 (D.D.C. 2017) for the proposition that imposing an arbitrary deadline "would run the risk of overburdening" agencies and "could even lead to the mistaken release of protected information." *See* Reply at 7. But in that case the court actually issued an "accompanying Order" requiring "Defendants to process Protect Democracy's requests on an expedited basis" without ordering a date certain at that time. *Id.* at *303. In the "accompanying Order," the Court "ORDERED that Defendants [we]re to file, by July 28, 2017, a status report on their ongoing search and processing efforts. That status report at a minimum [was to] include the estimated number of documents responsive to Plaintiff's requests, and a proposed processing and production timeline." *Protect Democracy*, Case No. 1:17-cv-00842-CRC (D.D.C. Jul. 13, 2017), ECF No. 15. Then, on August 4, 2017, the court "ORDERED that Defendants shall provide a final response to Plaintiff's request by September 8, 2017." *Protect Democracy*, Case No. 1:17-cv-00842-CRC (D.D.C. Aug. 4, 2017)

6

(Minute Order). In other words, the defendant was ordered to produce all non-exempt documents within less than two months.[4] *Id.* That timeline is of no help to Defendant,[5] because it is far more expedited than the reasonable production timeline of 6 months or 5,000 documents per month that Plaintiffs seek here – in a case that has already been pending without any production at all for almost 3 years. *See Villanueva*, 2021 WL 5882995 at *4 (ordering processing at rate of 5,125 pages per month and completion within 3 months).

### b. Defendant's Argument that the Court Must Defer to Defendant's Own Policies Relies on Inapposite Cases

Defendant cites *White v. Executive Office of U.S. Attorneys*, 444 F. Supp 3d 930 (S.D. Ill. 2020) for the proposition that, "[w]hen determining the rate at which a federal agency must respond to FOIA requests, courts often give deference to the agency's release policies." Reply at 8.[6] But in this case, Defendant is not even complying with its own policies and has not been producing any documents at all, let alone 300 per month. In fact, Defendant missed its own self-imposed deadline of July 24, 2025 despite asserting that documents would be produced then. *Compare* Reply at 2; Weetman Declaration at ¶ 29 *with* Dunlap Decl. ¶¶ 3-4. In any event, *White*'s out-of-district assertion does not accord with the weight of authority in this District and elsewhere. The Court must not to defer to agency policy because "unreasonable delays in disclosing nonexempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Villanueva*, 2021 WL 5882995, at *3-4 ("proposed production schedule at a regular rate of 500 pages per month [wa]s woefully inadequate"); *accord Long v. U.S. I.R.S.*, 693 F.2d 907,

---

[4] And that case involved the contemporaneous bombing of Syria – an event much more sensitive and connected to national security than this case.

[5] Likewise, in *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1 (D.D.C. 2015) (Reply at 7), plaintiffs sought the production of all documents within twenty business days, only months after submitting its FOIA requests in March 2015 and August 2015. *Id.* at *3-4. And, in *Baker v. Consumer Fin. Prot. Bureau*, No. CV 18-2403(CKK), 2018 WL 5723146 (D.D.C. Nov. 1, 2018) (Reply at 7), the plaintiff submitted its FOIA request on July 26, 2018, then moved for injunctive relief on October 19, 2018, seeking production of all responsive documents by November 2, 2018. *Id.* at *2.

[6] In addition, *2005 Robert Julien Fam. Del. Dynasty Trust v. IRS*, .Case No. 23-cv-80756 (RLR-BER), 2024 WL 678134 *6 (S.D. FL 2024) cited by Defendant (Reply at 8) did not rule on a request for faster processing of a FOIA Request but instead ruled on various discovery requests, e.g., requests for admissions, request for production, that plaintiff had propounded on the agency. It is thus inapposite. Moreover, Judge Reinhart clearly stated that, "The Trust may be entitled to an order that would require the IRS to process the Request faster." *Id.* at *2.

910 (9th Cir. 1982) ("unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses.").

### c. Defendant's Argument that the Court Should Consider Subjective Motive Relies on Inapposite Cases

Plaintiffs also cite to *White* for the proposition that the Court should consider subjective "motive" when determining "how and when the agency must respond." Reply at 8. The *White* case involved a plaintiff who sought "records from the FBI on no less than 57 subjects," in "six letters," and "refused to narrow his requests to make them more manageable or more likely to produce documents that actually shed light on the functioning of government.," and "failed to articulate any real public interest in the records he seeks." *Id.* at 940, 943. The plaintiff was contending that "the primary function of the FBI in modern America is to foment crime through manipulation of mentally and intellectually disabled people, and, a Satanic pedophile cult seems as good of an instrument in carrying out the mission as a 'Nazi' party." *Id.* at 946. The plaintiff asserted that "the FBI operates a wide variety of political, religious, and criminal organizations including Satanic cults and pedophile clubs, and that the requested records could shed light on whether these individuals were working with the FBI in conducting such activities." *Id.* His requests were based on a belief that that the FBI had "wronged him and his white supremacist affinity groups." *Id.* at 943. Its holding is confined to the facts of that out-of-district decision.

In fact, motive should *not* be considered – "a requester's motive is irrelevant to the ultimate inquiry in a FOIA case: whether the agency properly withheld records." *Montgomery v. Internal Revenue Serv.*, 292 F. Supp. 3d 391, 396 (D.D.C. 2018) (Boasberg, J.); *see also Morley v. C.I.A.*, 719 F.3d 689, 690 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("FOIA is an equal-opportunity disclosure statute. For disclosure purposes, FOIA treats all requests and requesters the same—no matter the identity of the requesters, the specific benefit that might be derived from the documents, or the requesters' overt or subtle motives").

This case seeks records regarding the nationalization of the largest bank in Ukraine, PrivatBank, which the Complaint expressly states is a matter of "significant public interest" that has "attracted substantial attention from the press." ECF No. 1 at ¶ 18 n.4 (citing examples of news articles). In addition to being a matter of public interest, it is also a matter of personal interest to Plaintiffs – U.S. citizens who are entitled under FOIA to production pursuant to reasonable timetable. Indeed, the "fundamental principle of" FOIA is "public access to government

8

documents," *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989), which is based on the notion that citizens have a right to know what their government is doing. *Fla. Immigrant Advoc. Ctr. v. U.S. Dep't of State*, 09-22689-CIV-MORENO, 2010 WL 11601021, at *2 (S.D. Fla. Apr. 8, 2010) ("The purpose of FOIA 'is to encourage public disclosure of information so citizens may understand what their government is doing.'"). A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline. *Long* 693 F.2d at 910 ("unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent these abuses."); *Villanueva*, 2021 WL 5882995, at *3 (same).

## CONCLUSION

For the foregoing reasons, and consistent with FOIA's statutory mandates, the Court should deny Defendant's Motion to Stay and order Defendant to begin processing non-exempt documents at a rate of 5,000 pages per month or, alternatively, within six months.

Dated: August 2, 2025

Respectfully submitted,

/s/ *Robert T. Dunlap*
Robert T. Dunlap, Esq.
Florida Bar No. 119509
FREEDMAN NORMAND FRIEDLAND LLP
1 SE 3rd Avenue, Suite 1240
Miami, FL 33131
rdunlap@fnf.law

*Counsel for Plaintiffs*