UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20830-MOORE/Elfenbein

**MORDECHAI KORF**, *et al.*,

     Plaintiffs,

v.

**UNITED STATES
DEPARTMENT OF STATE**,

     Defendant.

_____/

**REPORT AND RECOMMENDATION ON PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

     **THIS CAUSE** is before the Court on Plaintiffs Mordechai Korf and Uriel Laber's

("Plaintiffs") Motion for Summary Judgment (the "Motion"), ECF No. [13], and Defendant United

States Department of State's ("Defendant") Consolidated Response in Opposition and Cross-

Motion for Summary Judgment, ECF No. [28].  The Honorable K. Michael Moore referred this

matter to the undersigned for a Report and Recommendation on all dispositive matters.  *See* ECF

No. [4].  Having carefully reviewed Plaintiffs' Motion, Defendant's Response and Cross-Motion,

Plaintiffs' Reply, the record, the Parties' supporting declarations and exhibits, and the applicable

law, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Summary Judgment, **ECF No.

[13]**, be **GRANTED**, and that Defendant's Cross-Motion for Summary Judgment, **ECF No. [28]**,

be **DENIED**.

CASE NO. 25-CV-20830-MOORE/Elfenbein

## I.   INTRODUCTION

### A.  Overview

This case centers on a dispute arising under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  *See* ECF No. [1] at ¶1.  At the heart of the dispute lies Defendant's alleged failure to timely search for, review, and produce non-exempt records responsive to Plaintiffs' November 29, 2022 FOIA request concerning, among other things, the nationalization of PrivatBank in Ukraine, alleged misconduct relating to PrivatBank, various individuals and entities, and records specifically relating to Plaintiffs themselves.  *See id.* at ¶¶36-37.  Although Defendant acknowledged receipt of Plaintiffs' FOIA request, it denied Plaintiffs' request for expedited processing, and placed the request in its "complex" processing track.  *See* ECF Nos. [28] at 6 and [28-1] at ¶11.  Defendant further advised Plaintiffs that it would be unable to comply with FOIA's statutory response deadline due to "unusual circumstances."  *Id*.  Despite the passage of more than two years following submission of the FOIA request, Defendant produced no records prior to the commencement of this litigation.  *See* ECF No. [27] at 2.

On February 21, 2025, Plaintiffs filed the instant action asserting three FOIA claims against Defendant: (1) failure to conduct an adequate search under 5 U.S.C. § 552(a)(3)(C) (Count I); (2) failure to respond within FOIA's statutory timeframe under 5 U.S.C. § 552(a)(6)(A)(ii)-(iii) and § 552(a)(6)(B) (Count II); and (3) failure to disclose non-exempt records under 5 U.S.C. § 552(a)(3) (Count III).  *See* ECF No. [1] at 9-10.  Pursuant to the Court's Order Setting Procedures and Deadlines in FOIA Cases, Plaintiffs filed their Motion for Summary Judgment seeking judgment in their favor on all three FOIA claims,  arguing that Defendant violated FOIA by (1) failing to conduct an adequate search, (2) failing to respond within the statutory timeframe, and (3) withholding non-exempt records.  *See* ECF No. [13] at 13-17.  Plaintiffs specifically ask the Court

to order Defendant to produce all responsive, non-exempt records within six months or, alternatively, at a rate of 5,000 pages per month. *Id.* at 17. Defendant then filed its Response and Cross-Motion, arguing that it conducted an adequate search, that untimeliness alone does not entitle Plaintiffs to substantive relief, and that its standard processing rate of 300 pages per month is reasonable. *See* ECF No. [28] at 11-20. Plaintiffs have since filed their Reply. *See* ECF No. [31]. The Parties' cross-motions are fully briefed and ripe for review.

### B. Factual Background

On November 29, 2022, Plaintiffs submitted a FOIA request to Defendant seeking records concerning themselves and the nationalization of PrivatBank in Ukraine. *See* ECF No. [1] at ¶¶36-37. Plaintiffs requested expedited processing of that FOIA request. *See id.* The request contained seven separate subparts and sought documents and communications dating back to 2014 or 2015, depending on the category of records requested. *See id.* The first subpart sought documents and communications relating to or discussing the nationalization of PrivatBank in Ukraine from 2015 to the present. *See id.* at 37(a). The second subpart requested documents and communications relating to or discussing potential fraud, insider dealing, or misconduct in PrivatBank in Ukraine from 2014 to the present. *See id.* at 37(b). The third and fourth subparts sought documents and communications relating to or discussing Ihor Kolomoisky and Gennadiy Boholiubov from 2014 to the present. *See id.* at 37(c)-(d). The fifth and sixth subparts requested documents and communications relating to or discussing Plaintiffs from 2014 to the present. *See id.* at 37(e)-(f). And the seventh subpart sought documents and communications relating to multiple entities, including Optima Ventures, LLC, Optima Acquisitions, LLC, Optima Specialty Steel, Inc., Zaporozhye Ferroalloy Plant, Joint Stock Company Nikopol Ferroalloy Plant, and several additional entities identified in the request. *See id.* at 37(g).

By letter dated December 8, 2022, Defendant acknowledged receipt of Plaintiffs' FOIA request and assigned it Case Control Number F-2023-02587. *See* ECF No. [28] at 6. In that same letter, Defendant denied Plaintiffs' request for expedited processing, explaining that the request did not demonstrate a "compelling need" for the requested information. *See id.* Defendant also advised Plaintiffs that it would be unable to respond within FOIA's 20-working-day statutory period because "unusual circumstances" applied. *Id.* Defendant identified those unusual circumstances as including "the need to search for and collect requested records from other Department offices or Foreign Service posts." *Id.* Defendant thereafter placed Plaintiffs' FOIA request in its "complex" processing track. *Id.*

On December 8, 2022, that same day, a member of the Department's FOIA intake team determined that the Bureau of European and Eurasian Affairs ("EUR") and the Department's eRecords Archive were reasonably likely to contain responsive records. *See* ECF No. [28-1] at 7. The intake team then tasked EUR and the FOIA Search Team to conduct searches for documents responsive to Plaintiffs' request. *See id.* On December 21, 2022, an employee in EUR's Office of Eastern European Affairs searched an individual electronic drive and the office's shared drive on the unclassified network and located 27 potentially responsive records. *Id.* On December 22, 2022, an analyst on the FOIA Search Team conducted an initial search of eRecords on the Department's unclassified and classified networks and reported 6,721 potentially responsive records. *See id.* After those initial searches, Plaintiffs' request was placed in the queue of pending complex FOIA requests awaiting assignment to an IAP/FCP analyst for responsiveness review. *See id.* Defendant admits that, based on the date Plaintiffs' request entered the complex FOIA queue and the number of requests ahead of it, Plaintiffs' request was not assigned to an IAP/FCP analyst for subsequent action before Plaintiffs filed this lawsuit in February 2025. *See id.*

4

Plaintiffs eventually filed this action on February 21, 2025, after more than two years had passed without any production of responsive records.  *See* ECF Nos. [1] at 1 and [27] at 2.  As noted above, Plaintiffs' Complaint asserts three claims under FOIA against Defendant for failure to conduct an adequate search for responsive records under 5 U.S.C. § 552(a)(3)(C), failure to respond within FOIA's statutory timeframe, and failure to disclose non-exempt responsive records. *See generally* ECF No. [1].

After Plaintiffs filed suit, Defendant transferred the request to the litigation arm of the Department's FOIA processing unit.  *See* ECF No. [28] at 7-8.  Defendant represents that it received Plaintiffs' FOIA Complaint on February 24, 2025 and that, on the next day, February 25, 2025, the FOIA case was assigned to a FOIA analyst on the litigation team within IAP/LA.  *See* ECF No. [28-1] at 7.  On March 5, 2025, the FOIA analyst, the analyst's supervisor, an Attorney-Adviser from the Department's Office of the Legal Adviser, and a FOIA senior reviewer met to discuss a strategy for processing Plaintiffs' FOIA request.  *See* ECF No. [28-1] at 7-8.  As a result of that meeting, Defendant determined that supplemental searches of EUR and the eRecords Archive were required and that the Bureau of Economic and Business Affairs ("EB") should also be tasked with conducting a search.  *See* ECF No. [28-1] at 8.  Defendant tasked EUR and EB on March 6, 2025, and EUR located 40 potentially responsive records while EB located 8 potentially responsive records.  *See id.*

On April 25, 2025, Defendant conducted additional searches of the eRecords Archive.  *See id.*  Defendant ran separate searches for each of the seven subparts of Plaintiffs' request to facilitate potential narrowing of the request.  *See id.*  Defendant used search terms corresponding to the subject matter of each subpart, including terms relating to PrivatBank nationalization, fraud, insider dealing, misconduct, Ihor Kolomoisky, Gennadiy Boholiubov, Mordechai Korf, Uriel

Laber, and the entities listed in subpart seven. *See id.* at 8-9. Defendant used a date range of January 1, 2014 through November 29, 2022 for those searches. *See* ECF No. [28-1] at 9.

The April 2025 searches yielded a substantial volume of potentially responsive records broken down as follows:

- For subpart one, Defendant identified 10,743 potentially responsive documents on the unclassified network and 1,987 potentially responsive documents on the classified network. *See id.* at 9.

- For subpart two, Defendant identified 8,027 potentially responsive documents on the unclassified network and 1,922 potentially responsive documents on the classified network. *See id.*

- For subpart three, Defendant identified 31,380 potentially responsive documents on the unclassified network and 14,852 potentially responsive documents on the classified network. *See id.*

- For subpart four, Defendant identified 6,353 potentially responsive documents on the unclassified network and 40 potentially responsive documents on the classified network. *See id.*

- For subpart five, Defendant identified 981 potentially responsive documents on the unclassified network and 30 potentially responsive documents on the classified network. *See id.*

- For subpart six, Defendant identified 1,009 potentially responsive documents on the unclassified network and 158 potentially responsive documents on the classified network. *See id.*

- For subpart seven, Defendant identified 2,362 potentially responsive documents on the unclassified network and 248 potentially responsive documents on the classified network.  *See id.*

Taken together, Defendant's April 2025 searches identified more than 80,000 potentially responsive documents.  *See* ECF No. [28] at 8-9.  Defendant represents that those search results were preliminary approximations of potentially responsive records rather than a final universe of responsive documents.  *See* ECF No. [28-1] at 10.  Defendant explains that because it ran separate searches for each subpart, records containing search terms from multiple subparts may have been counted more than once.  *See id.*  Defendant further explains that the preliminary results likely included duplicate records and non-responsive records that would be removed during responsiveness review.  *See id.*

After Defendant communicated the April 2025 search results to Plaintiffs, Defendant asked Plaintiffs to consider narrowing their request.  *See* ECF No. [28] at 9.  Plaintiffs declined Defendant's suggested narrowing proposals but asked Defendant to prioritize the two subparts seeking records about Plaintiffs themselves.  *See* ECF No. [28] at 10.  Defendant agreed to prioritize subparts five and six.  *See id.*  On May 28, 2025, Defendant advised Plaintiffs that it would process records at a rate of 450 pages every six weeks, which equates to approximately 300 pages per month. *See id.*  Defendant characterizes that rate as its standard processing rate for FOIA requests.  *See* ECF No. [28] at 9, 14.

Defendant subsequently made its first production on July 24, 2025.  *See* ECF No. [28-1] at 10.  Defendant's production letter stated that the Department had identified 14 responsive records subject to FOIA, releasing 8 records in full and 6 records in part, and considered the foreseeable harm standard when applying FOIA exemptions.  *See* ECF No. [32-1] at 2.  Defendant's letter

further stated that all non-exempt material reasonably segregable from exempt material had been released. *See id.*

As of August 21, 2025, Defendant represented that responsiveness review, productions to Plaintiffs and de-duplication had reduced the potentially responsive universe for subparts five and six to approximately 156 documents, consisting of approximately 2,767 pages. *See* ECF No. [28-1] at 10. Defendant further represented that it anticipated completing production of records responsive to subparts five and six in approximately six months. *See id.* Defendant stated that, after completing subparts five and six, it would proceed to process the remaining subparts of Plaintiffs' request. *Id.*

## II. LEGAL STANDARDS

### A. General Summary Judgment Standard

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008). A fact is material if it "would affect the outcome of the suit under the governing law." *Id.* "The mere existence of a scintilla of evidence in support of" the non-moving party's position is insufficient; instead, "there must be evidence on which the jury could reasonably find for the" non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "Even when the parties agree on the basic facts, summary judgment is inappropriate if reasonable minds might differ on the inferences to be

drawn from those facts." *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986). The Court "may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied." *Id.*; s*ee also Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).

### B. FOIA Framework

FOIA's "fundamental principle" is "public access to Government documents." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151 (1989). FOIA reflects the premise that citizens have a right to know what their government is doing. *See Fla. Immigrant Advoc. Ctr. v. U.S. Dep't of State*, No. 09-CV-22689-MORENO, 2010 WL 11601021, at *2 (S.D. Fla. Apr. 8, 2010). ("The purpose of FOIA 'is to encourage public disclosure of information so citizens may understand what their government is doing.'") (citation omitted). FOIA is therefore "primarily an access and disclosure statute." *St. Andrews Park, Inc. v. U.S. Dep't of Army Corps of Eng'rs*, 299 F. Supp. 2d 1264, 1267 (S.D. Fla. 2003) (quoting *Ely v. F.B.I.*, 781 F.2d 1487, 1489-90 (11th Cir. 1986)). "It provides for wide-ranging citizen access to government documents and presumes them subject to disclosure absent a clear showing to the contrary." *Id.*

To effectuate those purposes, FOIA requires federal agencies to make agency records "promptly available" to any person who submits a proper request, unless the records fall within one of FOIA's statutory exemptions. 5 U.S.C. § 552(a)(3)(A). FOIA also imposes strict timing requirements. *See* 5 U.S.C. § 552(a)(6)(A)(i). An agency generally must determine within 20 working days "after the receipt of any such request" whether it will comply with the request and must immediately notify the requester of its determination, the reasons for that determination, and the requester's right to appeal any adverse determination. 5 U.S.C. § 552(a)(6)(A)(i).

To make a legally sufficient "determination," an agency must do more than merely

9

acknowledge receipt of a request or place the request in a processing queue. *Citizens for Resp. & Ethics in Washington v. Fed. Elec. Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013). Rather, the agency must at least "gather and review the documents," "determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents," and "inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188; *accord Villanueva v. U.S. Dep't of Justice*, No. 19-CV-23452, 2021 WL 5882995, at *3 n.4 (S.D. Fla. Dec. 13, 2021). FOIA permits limited extensions in "unusual circumstances." 5 U.S.C. § 552(a)(6)(B). As the D.C. Circuit explained in *Citizens for Resp. & Ethics in Washington*:

> To summarize: An agency usually has 20 working days to make a "determination" with adequate specificity, such that any withholding can be appealed administratively. 5 U.S.C. § 552(a)(6)(A)(i). An agency can extend that 20-working-day timeline to 30 working days if unusual circumstances delay the agency's ability to search for, collect, examine, and consult about the responsive documents. *Id.* § 552(a)(6)(B). Beyond those 30 working days, an agency may still need more time to respond to a particularly burdensome request. If so, the administrative exhaustion requirement will not apply. But in such exceptional circumstances, the agency may continue to process the request, and the court (if suit has been filed) will supervise the agency's ongoing progress, ensuring that the agency continues to exercise due diligence in processing the request. *Id.* § 552(a)(6)(C).

*Citizens for Resp. & Ethics in Washington*, 711 F.3d at 189.

Although FOIA does not require an agency to physically produce all responsive records at the same moment it communicates its determination, the statute does not permit an agency to delay production indefinitely after the determination is made. *See id.* at 188-89. FOIA gives an agency "some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce." *Id.* at 189. But the agency must still make the records "promptly available." *Id.* "Promptly available," though context dependent, "typically

would mean within days or a few weeks of a 'determination,' not months or years." *Id.* at 188; *see also Scott v. Internal Revenue Serv.*, No. 18-CV-81750, 2021 WL 2882014, at *9 (S.D. Fla. July 9, 2021) (same).

If an agency fails to comply with FOIA's timing requirements, the requester is deemed to have constructively "exhausted administrative remedies." 5 U.S.C. § 552(a)(6)(C)(i). The agency's failure to meet FOIA's deadline does not, standing alone, automatically entitle the requester to summary judgment on every FOIA claim. *See Jacobs v. BOP*, 725 F. Supp. 2d 85, 89 (D.D.C. 2010) ("The [Agency's] untimely response does not entitle plaintiff to judgment in his favor."); *Schmidt v. Shah*, No. 08-2185, 2010 WL 1137501, at *10 (D.D.C. Mar. 18, 2010) ("[A] lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester.") (citations omitted). But that principle does not leave courts powerless when an agency's delay is prolonged, unexplained, or inconsistent with FOIA's disclosure obligations. *See Villanueva*, 2021 WL 5882995, at *3.

Indeed, "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." *Payne Enters., Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (quoting *Long v. IRS*, 693 F.2d 907, 910 (9th Cir. 1982)); *see also Villanueva*, 2021 WL 5882995, at *3 (same). Accordingly, "broader injunctive relief is appropriate to enforce FOIA provisions," including relief designed "to prevent lengthy delays." *Ray v. U.S. Dep't of Justice*, 770 F. Supp. 1544, 1551 (S.D. Fla. 1990). A court may therefore use its equitable authority to require an agency to process records according to a court-imposed schedule. *See Long*, 693 F.2d at 910; *Clemente v. FBI*, 71 F. Supp. 3d 262, 267 (D.D.C. 2014); *Villanueva*, 2021 WL 5882995, at *3.

### III.     DISCUSSION

"Generally, FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified." *Miscavige v. I.R.S.*, 2 F.3d 366, 369 (11th Cir. 1993). In FOIA litigation, an agency is entitled to summary judgment only if the record shows there is no genuine dispute of material fact and the agency demonstrates that each requested record "either has been produced," is not subject to FOIA, "or is wholly exempt" from disclosure. *Fla. Immigrant Advocacy Ctr. v. Nat'l Sec. Agency*, 380 F. Supp. 2d 1332, 1336-37 (S.D. Fla. 2005). An agency may rely on affidavits or declarations to satisfy its burden, so long as those submissions provide an adequate factual basis for the Court's determination. *See Del Rio v. Miami Field Office of the FBI*, No. 08-CV-21103, 2009 WL 2762698, at *6 (S.D. Fla. Aug. 27, 2009) ("FOIA litigation is amenable to resolution on summary judgment. Use of declarations or affidavits to meet the government's burden in such cases is appropriate so long as the declarations are specific and detailed enough to provide the necessary information needed for the court to make a decision."). Agency declarations are generally afforded "a presumption of good faith." *Del Rio*, 2009 WL 2762698, at *6; *see also Fla. Immigrant Advocacy Ctr.*, 380 F. Supp. 2d at 1343. The agency's declarations, however, must be sufficiently detailed and non-conclusory to permit the Court to evaluate the adequacy of the agency's efforts and the lawfulness of any withholding or delay. *See Miccosukee Tribe*, 516 F.3d at 1248.

In the search context, the agency must show that it conducted a search reasonably calculated to "uncover all relevant documents." *Id.* Agency declarations may satisfy that burden if they describe, in reasonable detail, the files searched, the search methods used, and why those methods were "reasonably calculated to locate" responsive records. *Ray v. U.S. Dep't of Justice*, 908 F.2d 1549, 1558 (11th Cir. 1990); *Miccosukee Tribe*, 516 F.3d at 1248 (same).

12

In the production-delay context, however, the analysis is different. Even if the agency's search is adequate, FOIA still requires the agency to process and produce non-exempt responsive records "promptly." 5 U.S.C. § 552(a)(3)(A); *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89. A production schedule that would delay disclosure for months or years may be inconsistent with FOIA's requirement that non-exempt records be made "promptly available." *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188. Thus, where an agency has identified responsive records but proposes a processing rate that would substantially postpone disclosure, the Court may evaluate whether the proposed rate is reasonable in light of factors, including the scope of the request, the agency's resources and competing obligations, the agency's diligence in processing the request, and the effect of the proposed schedule on both the requester and other pending FOIA matters. *See Harrington v. Food & Drug Admin.*, 581 F. Supp. 3d 145, 150 (D.D.C. 2022); *Colbert v. FBI*, No. 16-CV-1790 (DLF), 2018 WL 6299966, at *3 (D.D.C. Sept. 3, 2018); *Clemente*, 71 F. Supp. 3d at 267.

The governing legal framework, therefore, requires the Court to address the three FOIA claims separately. As to Count I, the Court must determine whether the agency's declarations and search efforts demonstrate an adequate search. As to Count II, the Court must determine whether the record establishes Defendant failed to make a timely FOIA determination within the statutory timeframe. And as to Count III, the Court must determine whether Defendant's continued withholding of non-exempt responsive records through its proposed production schedule is reasonable under FOIA or whether injunctive relief and a court-imposed production schedule are necessary to prevent further delay.

### A.  Count I – Adequacy of Search

Starting with Count I, Plaintiffs first argue that Defendant violated FOIA by failing to conduct an adequate search responsive to Plaintiffs' November 29, 2022 FOIA request.  *See* ECF No. [13] at 13.  Defendant responds that its searches were reasonably calculated to uncover responsive records and that the searches performed were supported by detailed agency declarations describing the methods employed.  *See* ECF No. [28] at 11-13.  Upon careful review of the record, the Court recommends that summary judgment be entered in Plaintiffs' favor on Count I.

FOIA requires federal agencies, upon receipt of a proper request, to conduct searches reasonably calculated to uncover responsive records and to make those records "promptly available" to the requester.  5 U.S.C. § 552(a)(3)(A).  It further requires that "an agency shall make reasonable efforts to search for the records in electronic form or format, except when such efforts would significantly interfere with the operation of the agency's automated information system." 5 U.S.C. § 552(a)(3)(C).  An agency bears the burden of demonstrating that its search efforts were adequate under the circumstances.  *See Miccosukee Tribe*, 516 F.3d at 1248.  To satisfy that burden, the agency must provide affidavits or declarations that are "relatively detailed, nonconclusory and submitted in good faith."  *Ray*, 908 F.2d at 1558; *Miccosukee Tribe*, 516 F.3d at 1253.

Importantly, however, FOIA's obligations extend beyond the mere mechanical act of running search terms through agency databases.  *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188.  Under FOIA, an agency must make a "determination" within the statutory timeframe, which requires the agency to "gather and review the documents," determine what it will produce or withhold, and communicate that determination to the requester.  *Id*.  Thus, an agency does not satisfy FOIA merely by conducting a cursory preliminary retrieval of potentially

14

responsive records while leaving those records entirely unreviewed for years thereafter. *See id.* at 188. The text of the statute further supports this interpretation as it defines the term "search" as follows: "to *review*, manually or by automated means, agency records for the purpose of locating those records which are responsive to a request." 5 U.S.C. § 552(3)(D) (emphasis added). Thus, a search alone is not enough — there must also be some amount of review of the documents within the determination period.

Here, Defendant's own declarations establish that although preliminary searches were conducted in December 2022, no review or processing of the resulting records occurred until after Plaintiffs initiated this litigation more than two years later. *See* ECF No. [28-1]. Specifically, Defendant represents that on December 21, 2022, an employee within EUR searched certain electronic drives and located 27 potentially responsive records. *See id.* at ¶13. Defendant further represents that on December 22, 2022, an analyst searched its classified and unclassified eRecords systems and identified approximately 6,721 potentially responsive records. *See id.* at ¶14.

Defendant admits, however, that after those preliminary retrieval efforts, Plaintiffs' request "was not assigned to an IAP/FCP analyst for subsequent action by the time Plaintiffs initiated this litigation in February 2025." *Id.* at ¶14. Defendant further admits that the records identified in December 2022 remained unreviewed while Plaintiffs' request sat in its "complex" queue for more than two years. *Id.* Indeed, Defendant concedes that proper processing efforts did not begin until after litigation commenced and the request was transferred to its litigation-processing unit in February 2025. *See id.* at ¶¶15-19.

The Court finds Plaintiffs' argument persuasive that such conduct does not constitute an adequate FOIA search within the meaning of the statute. *See* 5 U.S.C. § 552(a)(3)(C). As Plaintiffs correctly observe, "[s]earching for records does not mean typing a few words into a search engine

and then, for years, not reviewing any of the documents that hit on search terms." ECF No. [31] at 11; *see also Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89. Defendant's interpretation would effectively permit an agency to satisfy FOIA merely by generating preliminary search results while indefinitely postponing review, responsiveness determinations, exemption analysis, and production obligations. That interpretation cannot be reconciled with FOIA's requirement that agencies both conduct adequate searches and "make the records promptly available." 5 U.S.C. § 552(a)(3)(A).

Nor does the Court find Defendant's reliance on post-litigation searches sufficient to defeat summary judgment on Count I. Defendant's briefing primarily defends the adequacy of the searches conducted after Plaintiffs filed suit in 2025. *See* ECF No. [28] at 11-13. But Plaintiffs' claim concerns Defendant's failure to conduct an adequate search during the more than two-year period preceding litigation. *See generally* ECF No. [1]. Defendant's post-litigation efforts do not negate the undisputed fact that no analyst reviewed the initially identified records and no meaningful processing occurred for years after the FOIA request was submitted. Defendant's Cross-Motion for Summary Judgment and supporting declarations wholly fail to explain why the substantially more robust searches and review efforts undertaken after litigation commenced could not have been performed during the more than two-year period following submission of Plaintiffs' FOIA request. Indeed, Defendant offers no meaningful explanation as to why the searches ultimately conducted in 2025 — including the expanded searches across classified and unclassified systems, the use of refined search terms, the assignment of analysts, the responsiveness review, and the coordinated processing efforts among Department personnel — could not have been initiated when the FOIA request was first received in November 2022. This absence of explanation

16

further undermines Defendant's position that it exercised the diligence and good-faith effort required under FOIA.

To the contrary, the dramatic expansion of the responsive universe following the 2025 searches supports Plaintiffs' position regarding the adequacy of the pre-suit search. Defendant's initial December 2022 search identified approximately 6,721 potentially responsive records. *See* ECF No. [28-1] at ¶14. Yet Defendant's subsequent post-litigation searches yielded more than 80,000 potentially responsive records across classified and unclassified systems. *See* ECF No. [28-1] at ¶18. Although Defendant attributes that increase in part to duplicate records and broader search parameters, the substantial discrepancy nevertheless undermines Defendant's contention that the initial pre-litigation search process was reasonably calculated to uncover responsive records in a legally adequate manner.

The Court is also mindful that FOIA "is primarily an access and disclosure statute" designed to promote broad public access to government records. *See St. Andrews Park, Inc.*, 299 F. Supp. 2d at 1267. Permitting an agency to satisfy FOIA's search obligations through preliminary, unreviewed retrieval efforts followed by years of inactivity would undermine FOIA's central purpose and effectively nullify the statute's timing and disclosure requirements. As such, because the material facts are undisputed regarding Defendant's wholesale failure to review or process the records identified during its initial pre-litigation searches, the Court concludes that Plaintiffs are entitled to summary judgment on Count I. Conversely, because Defendant has failed to establish — as a matter of law — that its pre-litigation search efforts satisfied FOIA's adequacy requirements, the Court concludes that Defendant is not entitled to summary judgment on Count I. Accordingly, I respectfully **RECOMMEND** that Plaintiffs' Motion for Summary Judgment **BE**

17

**GRANTED** as to Count I.  I further **RECOMMEND** that Defendant's Cross-Motion for Summary Judgment **BE DENIED** as to Count I.

### B.  Count II – Failure to Respond Within the Statutory Timeframe

Plaintiffs next argue that Defendant violated FOIA by failing to comply with FOIA's mandatory timing requirements.  The Court agrees.

FOIA imposes specific statutory deadlines on federal agencies responding to requests for agency records.  Under 5 U.S.C. § 552(a)(6)(A)(i), an agency must determine within twenty (20) working days after receipt of a FOIA request "whether to comply with such request" and must immediately notify the requester of that determination, the reasons therefor, and the requester's right to appeal any adverse determination.  Although FOIA permits agencies to extend that period in cases involving "unusual circumstances," such extensions are limited and do not relieve the agency of its obligation to exercise due diligence and make records promptly available.  *See* 5 U.S.C. § 552(a)(6)(B); *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89.

As explained by the D.C. Circuit in *Citizens for Resp. & Ethics in Washington*, a proper FOIA "determination" requires more than a perfunctory acknowledgment letter or mere placement of a request into a processing queue.  *Id.* at 188.  Rather, to make a lawful determination, the agency must at minimum: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."  *Id.*  Although FOIA does not necessarily require simultaneous production of responsive records at the moment the determination issues, the statute nevertheless requires agencies to "make the records promptly available."  *Id.* at 188-89; 5 U.S.C. §

552(a)(3)(A).   And "promptly available" generally means "within days or a few weeks," not "months or years." *Id.* at 188.

The record here establishes, without genuine dispute, that Defendant failed to comply with those statutory obligations.  Plaintiffs submitted their FOIA request on November 29, 2022.  *See* ECF No. [13] at 5.  Defendant acknowledged receipt of the request on December 8, 2022, denied expedited processing, invoked "unusual circumstances," and placed the request in its "complex processing track."  *See* ECF Nos. [28] at 6 and [28-1] at ¶11.  Defendant further advised Plaintiffs that additional time would be required because the request implicated searches across multiple Department offices and systems.  *See* ECF No. [28] at 6.

Despite that initial communication on December 8, 2022, Defendant never (even years later) provided Plaintiffs with its "determination" as to whether it would comply with the FOIA request and its reasons for that determination.  Indeed, the only "determination" that Defendant made was to deny *expedited* processing at the department level (then again on appeal).  Defendant's December 8, 2022 letter in which it denied the expedited processing request, availed itself of the "unusual circumstances" safety valve, and then placed the request in the "complex processing track"  was not a "determination" at all — at least not in the way FOIA contemplates.  *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 187 ("The agency cannot make the requisite 'determination' by simply stating its future intent to produce some non-exempt documents.").

Defendants' submissions further support this conclusion.  Indeed, Defendant admits that no records were produced to Plaintiffs between December 2022 and the filing of this action in February 2025 — a period exceeding two years.  *See* ECF Nos. [27] at 2 and [28-1] at ¶14.  Defendant further concedes that Plaintiffs' request "was not assigned to an IAP/FCP analyst for

subsequent action by the time Plaintiffs initiated this litigation in February 2025." ECF No. [28-1] at ¶ 14.  Defendant attributes that delay to the Department's FOIA backlog and Plaintiffs' placement in the "complex" queue.  *Id.*

These facts are dispositive as to Count II.  Whatever operational difficulties Defendant may face, FOIA does not permit an agency to leave a request effectively dormant for more than two years without completing review, making a substantive determination, or producing responsive records.  *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89; *Scott*, 2021 WL 2882014, at *9 (recognizing that FOIA requires records to be made "promptly available" and that excessive delays contravene the statute's requirements).  Nor does the invocation of "unusual circumstances" under § 552(a)(6)(B) authorize indefinite delay.  The statute expressly contemplates continued judicial supervision where agencies require additional time beyond the statutory period.  *See* 5 U.S.C. § 552(a)(6)(C); *Citizens for Resp. & Ethics in Washington*, 711 F.3d at 189.

Defendant argues that untimeliness alone does not automatically entitle a FOIA requester to substantive relief.  *See* ECF No. [28] at 13.  Defendant is correct insofar as courts have recognized that mere violation of FOIA's timing provisions does not automatically require judgment in the requester's favor in every circumstance.  *See Jacobs*, 725 F. Supp. 2d at 89; *Schmidt*, 2010 WL 1137501, at *10.  But Defendant's reliance on those authorities is misplaced here.

Plaintiffs do not merely seek recognition of constructive exhaustion of administrative remedies.  Nor do Plaintiffs rely solely on a technical violation of FOIA's deadlines.  Rather, Plaintiffs seek declaratory and injunctive relief based on Defendant's concession and undisputed failure to timely review, determine, and produce responsive records over a period exceeding two

20

years. *See* ECF Nos. [13] and [28-1] at ¶¶14-15. The present record establishes far more than a brief procedural delay or isolated statutory violation. Defendant's own declarations demonstrate that Plaintiffs' request remained effectively stagnant in the Department's queue until litigation forced reassignment to the Department's litigation-processing unit. ECF No. [28-1] at ¶¶14-15.

Indeed, the Court has already expressed concern regarding Defendant's lack of diligence in this matter. *See* ECF No. [27]. In denying Defendant's prior motion to stay, the Court observed that Defendant had "failed to provide processing records to demonstrate that it is actually following its claimed first-come, first-served policy," and further found that Defendant's delays reflected "a lack of diligent effort to process Plaintiffs' request in a timely manner." ECF No. [27] at 11-12. Defendant has not meaningfully rebutted those concerns in the present summary judgment record.

The Court further notes that Defendant's mere processing efforts appear to have accelerated only after Plaintiffs commenced this litigation. Defendant admits that Plaintiffs' request was transferred to the Department's litigation-processing division after the Complaint was filed in February 2025. *See* ECF No. [28-1] at ¶15. Defendant thereafter conducted supplemental searches in or around April 2025 and made its first production on July 24, 2025. *See id.* at ¶¶17-19. While those later efforts may bear on the appropriate scope of equitable relief, they do not erase Defendant's undisputed statutory noncompliance during the preceding two-year period. *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 188-89; *Scott*, 2021 WL 2882014, at \*9. FOIA's central purpose is to ensure prompt public access to government records and prevent agencies from indefinitely postponing disclosure obligations. *See John Doe Agency*, 493 U.S. at 151; *Fla. Immigrant Advoc. Ctr.*, 2010 WL 11601021, at \*2. Allowing an agency to acknowledge a request, place it in a queue, and then leave it unreviewed for years without meaningful action would substantially undermine FOIA's statutory framework and purpose.

21

Accordingly, because no genuine dispute of material fact exists regarding Defendant's failure to comply with FOIA's statutory timing requirements, the Court concludes that Plaintiffs are entitled to summary judgment on Count II. Conversely, Defendant has failed to establish as a matter of law that its handling of Plaintiffs' request complied with FOIA's timing and diligence obligations. Accordingly, I respectfully **RECOMMEND** that Plaintiffs' Motion for Summary Judgment **BE GRANTED** as to Count II. I further **RECOMMEND** that Defendant's Cross-Motion for Summary Judgment **BE DENIED** as to Count II.

### C. Count III – Failure to Disclose Non-Exempt Records

Plaintiffs finally contend that Defendant is unlawfully withholding non-exempt records through an unreasonably slow production schedule. The Court cannot disagree.

FOIA requires agencies not only to conduct adequate searches and make timely determinations, but also to "make the records promptly available to any person" upon receipt of a proper request. 5 U.S.C. § 552(a)(3)(A). The statute further authorizes district courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld." 5 U.S.C. § 552(a)(4)(B). Courts have repeatedly recognized that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent such abuses." *Payne Enters.*, 837 F.2d at 494 (quoting *Long*, 693 F.2d at 910); *see also Ray*, 770 F. Supp. at 1551 (recognizing that "broader injunctive relief is appropriate to enforce FOIA provisions" and to prevent lengthy delays); *Villanueva*, 2021 WL 5882995, at *3 (same).

Courts possess broad equitable discretion in FOIA cases to establish reasonable production schedules and supervise ongoing agency compliance. *See Clemente*, 71 F. Supp. 3d at 268-69; *Long*, 693 F.2d at 910; *Villanueva*, 2021 WL 5882995, at *5. Indeed, where an agency's proposed

processing schedule would effectively postpone disclosure for years, courts routinely intervene and impose court-supervised production timelines. *See Citizens for Resp. & Ethics in Washington*, 711 F.3d at 189 (explaining that courts may supervise an agency's ongoing progress where additional time is required beyond FOIA's statutory deadlines); *Clemente*, 71 F. Supp. 3d at 269 ("A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline.").

The determination of a reasonable production schedule is highly context-specific and requires balancing multiple competing considerations, including: the size and complexity of the request; the agency's overall FOIA burden; competing requests pending before the agency; staffing and resource limitations; national security or classified-review concerns; the public and private interests implicated by disclosure; the agency's prior diligence in processing the request; and the practical effect of the proposed production schedule. *See Colbert*, 2018 WL 6299966, at *3; *Harrington*, 581 F. Supp. 3d at 150; *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 185 (D.D.C. 2018).

Here, Defendant argues that its standard processing rate of approximately 300 pages per month — or 450 pages every six weeks — is reasonable in light of the Department's FOIA backlog, staffing limitations, classified-review obligations, and competing litigation demands. *See* ECF No. [28] at 14-20. Defendant further contends that substantially accelerated processing risks inadvertent disclosure of exempt or classified material and would unfairly prejudice other FOIA requesters awaiting processing. *See id.* at 17-19.

The Court recognizes Defendant's concerns. Courts appropriately afford substantial deference to agencies regarding logistical burdens, allocation of limited resources, classified-review obligations, and the risk of inadvertent disclosures involving sensitive government

information.  *See Protect Democracy Project v. U.S. Dep't of Defense*, 263 F. Supp. 3d 293 (D.D.C. 2017); *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 14 (D.D.C. 2015); *Baker v. Consumer Fin. Prot. Bureau*, No. 18-2403, 2018 WL 5723146, at *5 (D.D.C. Nov. 1, 2018).  The Court is also mindful that federal courts "must be sensitive to an Executive Branch agency's ability to expend public funds or to reallocate its workforce" and cannot simply order agencies to "hire more people" or procure additional resources.  *2005 Robert Julien Fam. Del. Dynasty Trust v. IRS*, No. 23-CV-80756, 2024 WL 678134, at *2 (S.D. Fla. 2024).

Nevertheless, on the present record, Defendant's proposed production schedule is unreasonable as a matter of law.  First, the timeline in this case is extraordinary.  Plaintiffs submitted their FOIA request on November 29, 2022.  *See* ECF No. [13] at 5.  Defendant produced no records whatsoever for more than two-and-a-half years.  *See* ECF No. [27] at 2.  Defendant's first production did not occur until July 24, 2025 and even then, Defendant released only eight records in full and six records in part, processing merely approximately 450 pages from a universe exceeding 80,000 potentially responsive records.  *See* ECF Nos. [28] at 9 and [28-1] at ¶19.  Such delay substantially exceeds what courts have recognized as "prompt" disclosure under FOIA.  *See Citizens for Responsibility & Ethics in Washington*, 711 F.3d at 188 (explaining that "promptly available" generally means "within days or a few weeks," not "months or years").

Second, Defendant's proposed production pace would effectively prolong disclosure for an extraordinary period of time.  While Defendant takes issue with Plaintiffs' precise calculations regarding the ultimate production timeline, Defendant does not dispute that its searches identified tens of thousands of potentially responsive documents across classified and unclassified systems.  *See* ECF Nos. [28] at 8-9 and [28-1] at ¶18.  Even accounting for duplication and non-responsive records, Defendant acknowledges that the responsive universe remains substantial.  *See id.*  Under

CASE NO. 25-CV-20830-MOORE/Elfenbein

Defendant's proposed processing rate of approximately 300 pages per month, production would likely continue for decades. Indeed, Defendant has identified approximately 80,000 documents in response to word searches. Even if each document were only 1 page in length, it would take Defendant 266.66 months (or 22.22 years) to review and produce the documents (80,000 pages/300 pages per month = 266.66 months or 22.22 years). Such a schedule is fundamentally inconsistent with FOIA's core purpose of ensuring meaningful and timely access to government records. *See Payne Enters.*, 837 F.2d at 494; *Long*, 693 F.2d at 910.

Third, Defendant's own conduct substantially undermines its position regarding reasonableness and diligence. The record demonstrates that meaningful processing activity did not begin until after Plaintiffs initiated this litigation. Defendant admits that Plaintiffs' request remained unassigned to an analyst for responsiveness review until after suit was filed in February 2025. *See* ECF No. [28-1] at ¶14. The Court has already expressed concerns regarding Defendant's claimed adherence to a genuine first-in, first-out processing system, noting that Defendant failed to provide sufficient processing records demonstrating that such a policy was actually being followed. *See* ECF No. [27] at 11. The Court further concluded that Defendant's delays reflected "a lack of diligent effort to process Plaintiffs' request in a timely manner." *Id.* at 12. Those concerns remain largely unrebutted in the present summary judgment record.

Fourth, Defendant's declarations rely heavily on generalized institutional burdens while providing comparatively limited case-specific explanation for why faster production would be impossible here. While Defendant references staffing shortages, budget constraints, competing litigation demands, and classified-review concerns, *see* ECF No. [28] at 14-19, Defendant's own declarations demonstrate that the Department has already devoted substantial resources to post-

litigation searches, de-duplication efforts, responsiveness review, and interim productions once judicial intervention occurred.  *See* ECF No. [28-1] at ¶¶15-19.

Although the Court is unpersuaded by Defendant's proposed 300-page-per-month schedule under the specific facts presented here, the Court also recognizes that Plaintiffs' request that all processing be completed within six months may be impracticable given the breadth of the request, the substantial volume of responsive records, the classified-review obligations implicated by the searches, and the need for interagency and intra-agency consultations.  The Court must balance FOIA's disclosure mandate against legitimate operational realities faced by the agency.  *See* *Colbert*, 2018 WL 6299966, at *3.  Accordingly, the Court concludes that an accelerated but manageable production schedule is warranted under the circumstances presented here to prevent unreasonable delays.  *See* *Villanueva*, 2021 WL 5882995, at *3 ("Courts have found that unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent such]abuses.") (quotation marks and citation omitted).

In light of the extensive delay already incurred in this case, Defendant's lack of diligence during the pre-litigation period, the substantial potentially responsive universe of records, FOIA's statutory command that records be made promptly available, the equitable authority vested in this Court under 5 U.S.C. § 552(a)(4)(B), and the authorities cited by both Parties, the Court concludes that Defendant's proposed rate of approximately 300 pages per month is not reasonable.  *See* *Clemente*, 71 F. Supp. 3d at 269 ("A court therefore may use its equitable powers to require the agency to process documents according to a court-imposed timeline.").  The Court further concludes that Plaintiffs' alternative proposed rate of 5,000 pages per month represents a more appropriate balance between the need for meaningful disclosure and the operational burdens asserted by Defendant in this case.  *See* *Clemente*, 71 F. Supp. 3d at 269 (ordering the agency to

"process 5,000 documents per month responsive to the plaintiff's request and to produce responsive, non-exempt documents on a rolling basis."). The Court therefore finds that requiring Defendant to process and produce records at a rate of 5,000 pages per month, with priority given to subparts five and six relating specifically to Plaintiffs themselves, is reasonable. *See id.* The Court additionally finds that continued judicial supervision is appropriate to ensure compliance with FOIA's disclosure obligations and to prevent further unnecessary delay. *See id.*

Accordingly, because the undisputed record demonstrates that Defendant's present production schedule is unreasonable under FOIA, the Court finds that Plaintiffs are entitled to summary judgment on Count III. Conversely, because Defendant has failed to establish as a matter of law that its proposed production schedule satisfies FOIA's prompt-disclosure requirements, the Court concludes that Defendant is not entitled to summary judgment on Count III. Accordingly, I respectfully **RECOMMEND** that Plaintiffs' Motion for Summary Judgment **BE GRANTED** as to Count III. I further **RECOMMEND** that Defendant's Cross-Motion for Summary Judgment **BE DENIED** as to Count III. I additionally **RECOMMEND** that the Court order Defendant to process and produce responsive records at a rate of 5,000 pages per month and require sixty-day (60) status reports regarding Defendant's ongoing compliance.

## IV.    CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiffs' Motion for Summary Judgment, **ECF No. [13]**, be **GRANTED**, and that Defendant's Cross-Motion for Summary Judgment, **ECF No. [28]**, be **DENIED**, as follows:

1.   Plaintiffs' Motion be **GRANTED** as to **Count I** concerning adequacy of search;

2.   Plaintiffs' Motion be **GRANTED** as to **Count II** concerning Defendant's failure to comply with FOIA's statutory timing requirements;

3. Plaintiffs' Motion be **GRANTED** as to **Count III** concerning Defendant's withholding of non-exempt records through an unreasonable production schedule;

4. Defendant be **ORDERED** to process and produce responsive non-exempt records at a rate of 5,000 pages per month, prioritizing subparts five and six of Plaintiffs' request;

5. Defendant be **ORDERED** to file sixty-day (60) status reports regarding compliance with the Court's production schedule; and

6. The Court **ADMINISTRATIVELY CLOSE** this matter while retaining jurisdiction to enforce compliance with its Order.

Pursuant to Local Magistrate Rule 4(b), the Parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on June 1, 2026.

_____

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc: All Counsel of Record

28